Mark W. Lapham, Esq. (SBN 146352)
**LAW OFFICES OF MARK W. LAPHAM**
751 Diablo Rd.
Danville, CA 94526
TEL: (925) 837-9007
FAX: (925) 406-1616

Attorneys for Plaintiffs
ROMUALDO ENRIQUEZ and
OLIVIA ENRIQUEZ

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMUALDO ENRIQUEZ and<br><br>OLIVIA ENRIQUEZ<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., NATIONSTAR MORTGAGE, LLC and THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as trustee for the STRUCTURED ASSET MORTGAGE INVESTMENTS II TRUST 2006-AR7 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR7,<br><br>Defendant(s). | CASE NO.:<br><br>**VERIFIED COMPLAINT**<br><br>**1. WRONGFUL FORECLOSURE;**<br>**2. QUIET TITLE;**<br>**3. BREACH OF CONTRACT*;***<br>**4. FRAUD;**<br>**5. VIOLATION OF CAL. CIV. CODE SECTION 2924.17;**<br>**6. VIOLATION OF BUS. and PROFS. CODE, SECTION 17200,** *et seq*.;<br><br>**JURY TRIAL DEMANDED** |

ROMUALDO ENRIQUEZ and OLIVIA ENRIQUEZ (hereinafter "Plaintiffs") sue BANK OF AMERICA, N.A. ("hereinafter "BANA"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS"), and THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK (hereinafter "BNYM") as trustee for the STRUCTURED ASSET MORTGAGE INVESTMENTS II TRUST 2006-AR7 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES0 2006-AR7 (hereinafter "SAMI II Trust 2006 AR7") for wrongful

1  foreclosure, in order to quiet title to their real property, for breach of contract,  fraud, violation of

2  California Civil Code section 2924.17 and the California Business & Professions Code section

3  17200, *et seq.*

4      **A.  NAMED PARTIES AND JURISDICTION**

5      1.    Plaintiffs reside, and are domiciled, in California.  At all material times, Plaintiffs were,

6  and remain, owners of the Subject Property of this action, which is located at 2836 Pristine Way,

7  Brentwood, Contra Costa County, California 94513 (hereinafter "Property" or "Subject Property").

8  Plaintiffs would occupy the Subject Property but they were wrongfully dispossessed of the Property

9  by Defendant Bank of America, N.A. Plaintiffs are currently homeless.

10      2.    Defendant Bank of America, N.A. is a nationally chartered bank which is the lead bank

11  within Bank of America Corporation, a financial holding company. BANA's main offices are

12  located at 100 N. Tryon Street, Charlotte, NC  28255.  BANA is incorporated in the State of

13  Delaware.  On or about July, 1, 2008, Bank of America Corporation purchased COUNTRYWIDE

14  Financial Corporation, a Delaware Corporation and the parent company of COUNTRYWIDE Home

15  Loans, Inc. ("COUNTRYWIDE"), a New York corporation which was in the business of providing

16  residential mortgage loans. Thereafter, BAC Home Loans Servicing, LP, a wholly-owned servicing

17  subsidiary of BANA, became the servicer of Plaintiffs' loan. Subsequently, BANA succeeded by

18  merger to BAC Home Loans, Inc.  and became servicer of Plaintiffs' loan as a successor by merger

19  to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP.

20      3.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is organized and

21  existing under the laws of the State of Delaware. It is a wholly-owned subsidiary of MERSCORP

22  Holdings, Inc.  MERS' principal place of business is located at 1818 Library Street, Reston, VA

23  20190. Therefore, MERS is a citizen of Delaware and Virginia. MERS tracks the ownership

24  interests and servicing rights in mortgage loans and holds title to mortgages solely as a nominee for

25  the banks which subscribe to its services and which are the true beneficial owners of the mortgage

26  loans.

27      4.    Defendant Nationstar Mortgage LLC,  ("Nationstar") is one of the nation's leading

28  mortgage servicers and lenders.  Nationstar is a Delaware limited liability company with its

ENRIQUEZ  v. BANK OF AMERICA, et al.                    VERIFIED COMPLAINT

1    principal place of business located at 350 Highland Drive, Lewisville, Texas 75067.

2        5.    Defendant The Bank of New York Mellon f/k/a The Bank of New York is a nationally

3    chartered bank with its main offices located at 1 Wall Street, New York, N.Y. 10286. BYNM is

4    incorporated in the State of Delaware.  BNYM serves as trustee for the SAMI II Trust 2006-AR7.  It

5    is in its capacity as trustee, alone, that BNYM is sued in this action.

6        6.    This Court has jurisdiction of this action as the residential real property which is the

7    subject of this action is situated in Contra Costa County, California and the acts complained of

8    occurred in Brentwood. The amount in controversy exceeds $75,000 and there exists complete

9    diversity of the parties hereto.  Therefore, this court has jurisdiction of this action pursuant to 28

10   U.S.C. Section 1332.

11       **B.   MATERIAL FACTS COMMON TO ALL COUNTS**

12       7.    On June 15, 2006, Plaintiffs executed a forty-year adjustable rate mortgage loan

13   consisting of a Promissory Note, Deed of Trust, Adjustable Rate Rider and Planned Unit

14   Development Rider.   The loan was assigned Loan No. 52510398. The original loan servicing

15   number is 0128483169.  The mortgage loan product meets the definition of "negotiable instrument"

16   set forth in UCC Article 3-104.   *See* also Cal. UCC, section 3302. The loan was originated by

17   American Mortgage Express Corp. ("AMEC").  Alliance Title is identified as the trustee and MERS

18   is identified as the nominal beneficiary under the Deed of Trust ("DOT"). AMEC  recorded the Note

19   and DOT on June 21, 2006. The DOT, Adjustable Rate Rider and Planned Unit Development Rider

20   are attached hereto as **Exhibit "A"** and incorporated by reference as though fully set forth herein.

21       8.    The original servicer of Plaintiffs' loan was Countrywide Home Loans Servicing, LP.

22       9.    After BANA acquired Countrywide in July, 2008, BAC Home Loans assumed the

23   servicing of the loan.  On July 1, 2011, Defendant BANA became  the purported servicer as a result

24   of its merger with BAC. On May 1, 2013, BANA transferred servicing rights to Specialized Loan

25   Servicing, LLC ("SLS").  On   April 1, 2014, servicing rights were transferred to Defendant

26   Nationstar.

27       10.  Shortly after loan closing on June 15,  2006, AMEC, a "storefront" table lender, sold

28   Plaintiffs' Note and deed of trust to Countrywide Home Loans, Inc., the true table funder in an off-

ENRIQUEZ  v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

1  the-books funding arrangement whereby Countrywide pre-arranged the actual funding of the loan at
2  closing using its short-term revolving credit line provided by Bear, Stearns & Co.  The sale of
3  Plaintiffs' mortgage loan, for full loan value, extinguished all interest in, and title to,  Plaintiffs'
4  mortgage formerly held by AMEC, the original lender, and MERS, its nominee.

5       11.  Acting as the loan aggregator in the securitization transaction, Countrywide bundled the
6  subject loan in a pool with similar residential mortgages in its portfolio and irrevocably sold it on
7  August 1, 2006, without recourse, to EMC Mortgage Corporation ("EMC"), the sponsor in a
8  securitization transaction identified as the SAMI II TRUST 2006-AR7.  This was the second sale of
9  Plaintiffs' mortgage loan, again for full loan value.

10      12.  Immediately thereafter, EMC sold all the mortgage loans in the pool, including
11  Plaintiffs' mortgage, to Structured Asset Mortgage Investments II, Inc. ("SAMI II, Inc.") , the
12  depositor for the securitization transaction. The  sales were made pursuant to a Mortgage Loan
13  Purchase Agreement, dated September 5, 2006 and attached as Exhibit "J" to the governing Pooling
14  and Servicing Agreement (PSA") dated August 1, 2006. Due to its length, the PSA is not attached
15  hereto but is available for viewing at http://www.secinfo.com/dRQ1j.vYu.htm.  SAMI II, Inc.
16  created a special purpose vehicle formed as a mortgage-backed securities trust identified as the
17  SAMI II Trust 2006-AR7.  This securities trust has an election and continuing qualification as a real
18  estate mortgage investment conduit ("REMIC") in accordance with the Internal Revenue Code of
19  1986, as amended. The schedule of individual loans comprising the corpus of the Trust was not
20  attached to the governing trust documents  filed with the Securities and Exchange Commission.
21  However, data services to which agents of Plaintiffs subscribe, show that the subject mortgage loan
22  is currently listed as part of the SAMI II Trust-AR7 Trust under its original loan servicing number
23  (0128483169). *See* true and correct copies of ABSNET screenshots attached hereto as **Exhibit "B"**
24  and incorporated by reference as though fully set forth herein.

25      13. AMEC's sale of Plaintiffs' mortgage loan, for full loan value, to Countrywide
26  extinguished all interest and rights in the loan formerly held by AMEC, the original lender, and
27  MERS, its nominee. *See Cerezo v. Wells Fargo Bank*, N.A. 2013 WL 4029274 (N.D. Cal. Aug. 6,
28  2013) (the seller of the beneficial interest in a promissory note to a securities trust does not retain the

ENRIQUEZ  v. BANK OF AMERICA, et al.                                        VERIFIED COMPLAINT

1  rights to foreclose on property).

2  14. Any interest held by MERS in Plaintiffs' mortgage loan was extinguished upon the sale

3  to the MBS Trust for the additional reason that EMC, the Trust's sponsor, and SAMI II, Inc, the

4  trust's depositor, have never been  members of the MERS registry.  The SAMI II Trust 2006-AR7,

5  likewise, is not a MERS member. Once a mortgage is sold, MERS must establish an agency

6  relationship with its new principal, the new beneficiary.  *See*, *e.g*., *In Re Vargus*, 396 B.R. 511

7  (Bankr. C.D. Cal. 2008).

8  15. MERS' membership rules require that when a promissory note secured by an interest in

9  real property is transferred to a non-MERS member, MERS must execute an assignment of the

10  mortgage loan from MERS to the non-MERS assignee and record the assignment in the county in

11  which the real property is located.  MERS' membership rules further provide once the assignment is

12  filed, the loan is de-activated from the MERS registry.  MERS cannot arbitrarily reinsert itself into

13  the chain of title of Plaintiffs' mortgage loan.  As a nominal beneficiary, MERS can only act within

14  the scope of authority delegated to it by the owner of the mortgage loan. Here, there is no agency

15  relationship between MERS and any of the parties in the chain of title protocol mandated by the

16  documents governing the securities transaction.

17  16. Clearly, BANA did not succeed to any interest in Plaintiffs' loan when it acquired

18  Countrywide in July, 2008 as Plaintiffs' mortgage loan was no longer among Countrywide's assets in

19  July, 2008.

20  17. The SAMI II Trust 2006-AR7 is a Special Purpose Vehicle formed as a mortgage-

21  backed securities trust with an election and continuing qualification as a real estate mortgage

22  investment conduit ("REMIC") in accordance with the Internal Revenue Tax Code of 1986, as

23  amended. *See* PSA Sections 2.02. *See* also Article I, definitions of "REMIC" and "REMIC

24  Provisions".  Upon election and continuing qualification as a REMIC, the income of the trust, *i.e.*,

25  the scheduled mortgagors' payments, is taxed only at the Certificate Holder's (investor's) level.

26  18. Pursuant to section 860 of the Internal Revenue Code, in order for an investment entity

27  to qualify as a REMIC, all steps in the contribution and transfer of the notes must be a "true and

28  complete" sale between the parties in order to achieve bankruptcy remoteness. Upon formation of

5

ENRIQUEZ  v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

the REMIC-qualified MBS Trust, the Depositor sells the pooled mortgage loans in exchange for the securities certificates issued by the trust. Each step of the "true sale" process must be supported by effective delivery and certification of acceptance of the receiving party of the endorsed mortgage note and assigned deed of trust, reflecting the complete intervening assignments and transfers of each mortgage loan from each assignor to the last assignee.

19. Pursuant to the binding and governing PSA, the mandatory chain and order of intervening endorsement of the original mortgage Note and assignment of DOT of each mortgage loan would be as follows on or before the MBS trust's Closing Date of September 5, 2006:

- From AMEC, as loan Originator, to Countrywide as securitization aggregator (the first "true sale");

- From Countrywide to EMC, the securitization sponsor (the second "true sale");

- From EMC to SAMI II, Inc., the securitization depositor (the third "true sale"); and

- From SAMI II, Inc. to JPMorgan Chase, N.A., the trustee for the benefit of the certificate holders of the SAMI II Trust 2006-AR7 (the fourth and final "true sale"). Defendant Bank of New York Mellon succeeded Chase as trustee for the Trust.

20. JPMorgan Chase, N.A., the original trustee for the REMIC MBS Trust, was the fiduciary owner of the securitized mortgage loans backing the securities certificates. The Closing Date, or 90 days thereafter, is the absolute deadline for Chase to receive and accept contribution of any mortgage loan asset into the trust fund of the SAMI II Trust 2006-AR7. Any late conveyance of the subject mortgage after the MBS Trust's Closing Date or 90 days thereafter is, with limited exceptions, a prohibited action under the terms of the PSA.

21. In addition, the provisions of the PSA are designed to comply with Articles 3 and 9 of the Uniform Commercial Code ("UCC") which have been adopted by most states, including New York and California.

22. However, the chain of title protocol mandated by the governing PSA and the UCC was

ENRIQUEZ v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

1    not followed and JPMorgan Chase was not validly assigned Plaintiffs' mortgage loan before the

2    Closing Date of the securities trust. Therefore, Chase never held any beneficial or ownership interest

3    in Plaintiffs' loan and, therefore, neither Chase nor BNYM, its successor, is a secured creditor.

4         23.  Specifically, there exists no assignment of the mortgage from AMEC to Countrywide, or

5    from Countrywide  to EMC, or from EMC to SAMI II, Inc. Moreover, there exists no assignment

6    from SAMI II, Inc to Chase as trustee for the SAMI II Trust 2006-AR7. The failure to assign

7    Plaintiffs' mortgage to the participants in the securitization transaction constitutes a material breach

8    of the binding and governing terms of the PSA and violates the applicable provisions of Article 3 of

9    the UCC which sets forth requirements which must be met before an entity will qualify as "a person

10   entitled to enforce" a mortgage note.  As a result, there occurred an irreversible break in the chain of

11   title and ownership of Plaintiffs' mortgage loan rendering the present beneficiary, mortgagee and

12   secured lender undocumented and unknown.

13        24. On May 12, 2011, Cynthia Santos, as MERS' Assistant Secretary, executed an

14   Assignment of Deed of Trust ("Assignment 1") purporting to assign all beneficial interest under

15   Plaintiffs' deed of trust, together with the Note, to The Bank of New York Mellon f/k/a The Bank of

16   New York, as successor trustee to JPMorgan Chase Bank, N.A., as Trustee for the holders of SAMI

17   II Trust 2006-AR7, Mortgage Pass-through Certificates, Series 2006-AR7.  Assignment 1 was

18   recorded on May 17, 2011 at the request of Bank of America.  A true and correct copy of

19   Assignment 1 is attached hereto as **Exhibit "C"** and incorporated by reference as though fully set

20   forth herein.

21        25.  As MERS no longer held any interest in Plaintiff's mortgage when it purported to assign

22   the beneficial interest under the deed of trust together with the debt (Note) to Chase, in its capacity

23   as trustee of the SAMI II Trust 2006-AR7, the assignment is null and void.

24        26. Defendants MERS and BANA as well as Chase, knew that the securitization of

25   Plaintiff's mortgage in 2006 failed. They conspired to file the fraudulent[1] and felonious[2] assignment

26

27        [1] Cal. Penal Code §532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following ... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omissions."

28

ENRIQUEZ  v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

only to cover up the botched securitization.

27.  The sale is null and void for the additional reason that ,  EMC, the Sponsor in the securitization transaction, and SAMI II, Inc., the Depositor, are not members of the MERS registry. For this additional reason, MERS exited the chain of title of Plaintiff's mortgage in 2006.  MERS must prove an agency relationship with its principal. *See, e.g.*, *In Re Vargus*, 396 B.R. 511 (Bankr. C.D. Cal. 2008).  MERS has not provided any evidence that it has been appointed the nominal beneficiary by any purported subsequent holder of an interest in Plaintiffs' mortgage. MERS cannot arbitrarily re-assert itself into the chain of title of Plaintiffs' mortgage. Moreover, MERS never held any interest whatever in Plaintiffs' Note. "Although MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS® System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred by properly endorsing the promissory note to the transferee." MERS Procedures Manual at 63. MERS Procedure Manual is available for download and inspection from MERS' website http://www.mersinc.org/MersProducts/manuals.aspx?mpid=1.

28.  It is black letter law that the deed of trust follows the note but not *vice versa.* For this reason, it is a legal impossibility for MERS to have transferred only the beneficial interest in the DOT to BNYM in 2011. "An assignment of the note carries the mortgage with it while assignment of the latter alone is a nullity". *Carpenter v. Longan* (1872) 83 U.S. 271, 274.  *Accord Henley v. Hotaling* (1871) 41 Cal. 22, 28; *Seidell v. Tuxedo Land Co*. (1932) 216 Cal. 165, 170;  UCC Article 9-203(g).  *See also* Cal. Civil Code section 2936 ('[t]he assignment of a debt secured by mortgage carries with it the security").

29.  On September 29, 2011,  Plaintiffs filed a lawsuit in the Superior Court of Contra Costa County  against AMEC, BANA  and other parties for fraud and related misconduct pertaining to the

---

( . . . continued)

[2] California Penal Code Section 115 provides that: Any person who knowingly procures or offer any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine might be filed, registered or recorded under any law of this state or of the United States, is guilty of a felony.

ENRIQUEZ  v. BANK OF AMERICA, et al.                    VERIFIED COMPLAINT

1   origination of their mortgage loan.  The case was assigned Case No. MSC11-02293.

2       30. On January 18, 2012,  BANA, as attorney-in-fact for the Bank of New York Mellon

3   f/k/a the Bank of New York as successor trustee to JPMorgan Chase Bank, N.A., as trustee for the

4   holders of SAMI II Trust 2006-AR7 , Mortgage Pass-through Certificates, Series 2006-AR7

5   attempted to substitute Recontrust Company, N.A. for Alliance Title as trustee under Plaintiffs' deed

6   of trust. Cal. Civ. Code section 2934a. (a)(1)(A) requires that all beneficiaries execute a Substitution

7   of Trustee. As BNYM never received effective assignment of any interest in Plaintiffs' mortgage

8   loan, the Substitution is invalid, null and void. A true and correct copy of the Substitution of Trustee

9   is attached hereto as **Exhibit "D"** and incorporated by reference as though fully set forth herein.

10      31. On January 13, 2012, Recontrust issued a Notice of Default (NOD 1) against the

11  Plaintiffs.  NOD 1 was recorded on January 18, 2012. A true and correct copy of NOD 1 is attached

12  hereto as **Exhibit "E"** and incorporated by reference as though fully set forth herein.

13      32.  On April 20, 2012, Recontrust issued a Notice of Trustee's Sale ("NOTS 1") scheduling

14  a foreclosure sale of Plaintiffs' property for May 14, 2012. The sale did not  take place.  A true and

15  correct copy of NOTS 1 is attached hereto as **Exhibit "F"** and incorporated by reference as though

16  fully set forth herein.

17      33.  On April 5, 2013, Recontrust filed a Notice of Rescission of NOD 1.  A true and correct

18  copy of the Notice of Rescission is attached hereto as **Exhibit "G"** and incorporated by reference as

19  though fully set forth herein.

20      34.  On July 23, 2012, Plaintiffs executed Settlement and Agreement with BANA resolving

21  the litigation initiated on September 29, 2011 as to BANA. BANA signed the agreement on

22  September 13, 2012. A true and correct copy of the Settlement and Agreement is attached hereto as

23  **Exhibit "H"** and incorporated by reference as though fully set forth herein.

24      35.  The Settlement and Agreement required Plaintiffs to vacate their home no later than

25  August 31, 2012 and to dismiss the charges against BANA in the pending lawsuit. In return BANA

26  agreed to pay the Plaintiffs $5000.00 and take the property back. *See id.,* Paragraph 2. Plaintiffs, in

27  fact, vacated the property on August 31, 2012 and left it in a broom-swept condition.  Their attorney

28  dismissed BANA from the lawsuit and returned the key to Plaintiffs' former home to BANA's

9

ENRIQUEZ  v. BANK OF AMERICA, et al.                    VERIFIED COMPLAINT

attorney. *See* correspondence from Plaintiffs' attorney, dated September 7, 2012, to Clayton Gaddis, Esq., BANA's attorney, enclosing key to the subject Property a true and correct copy of which is attached hereto as **Exhibit "I"** and incorporated by reference as though fully set forth herein. *See also* Notice of Dismissal, filed October 29, 2012, a true and correct copy of which is attached hereto as **Exhibit "J"** and incorporated by reference as though fully set forth herein. BANA paid Plaintiffs $5000.00 as required by the agreement. *See* correspondence form BANA's attorney, dated September 14, 2012 and accompanying check, true and correct copies of which are attached hereto as **Exhibit "K"** and incorporated by reference as though fully set forth herein**.**

36. Even though Plaintiffs complied with all terms of the Settlement and Agreement, BANA, SPS and Nationstar refused to take Plaintiffs' names off title to their former property and continued to assess foreclosure fees and costs, as well as "default" advances made by the servicer pursuant to the PSA, against the Plaintiffs. *See, e.g.,* SLS Option Arm Mortgage Statement, dated December 18, 2013 and Nationstar statement, dated April 18, 2014, true and correct copies of which are attached hereto as **Exhibit "L"** and incorporated by reference as though fully set forth herein. In addition, both SLS and Nationstar charged the cost of lender-placed homeowner's insurance policies to the Plaintiffs. *See, e.g.,* Nationstar Notice of Placement of Insurance, dated July 7, 2014 a true and  correct copy of which is attached hereto as **Exhibit "M"** and incorporated by reference as though fully set forth herein.

37. On July 29, 2013, Defendant BANA, falsely holding itself out as the "holder" of Plaintiffs' deed of trust, purported to assign Plaintiffs' deed of trust and note to Defendant Nationstar.   The Assignment was recorded on August 13, 2013. A true and correct  copy of the Assignment is attached hereto as **Exhibit "N"** and incorporated by reference as though fully set forth herein.  The Assignment is clearly fraudulent, null and void.  BANA has never been in the chain of title to Plaintiffs' mortgage loan. At the time of the fraudulent assignment to Nationstar, BANA held no interest whatever in Plaintiffs' loan.  It was not even the loan servicer.  As BANA had no interest in Plaintiffs' mortgage loan to convey to Nationstar on July 29, 2013, the assignment is null and void and Nationstar is not a valid beneficiary.

38.  Nevertheless, without any authority whatsoever, Nationstar continues to report Plaintiffs

1  in default of their mortgage obligations to the three credit reporting agencies.  As a result, Plaintiffs'

2  creditworthiness has been destroyed. Consequently,  they have been unable to rent an apartment and

3  have no permanent residence.

4  39.  On July 16, 2014, Defendant Nationstar, as attorney-in-fact for The Bank of New York

5  Mellon as successor trustee for the SAMI II Trust, Mortgage Pass-through Certificates, Series 2006-

6  AR7, purported to substitute Quality Loan Service Corporation as trustee under Plaintiffs' deed of

7  trust.  However,  Defendant BNYM was not the beneficiary of record when the substitution was

8  attempted. Even though the July 29, 2013 assignment to Nationstar is fraudulent, null and void, title

9  does not automatically revert back to BNYM as trustee for the SAMI II Trust 2006-AR7. Cal. Civ.

10  Code section 2934a.(a)(1)(A) requires that all beneficiaries execute the Substitution of Trustee. As

11  BNYM, as trustee, was not a valid beneficiary when the substitution was executed, the substitution

12  is null and void and Quality Loan is not a duly substituted trustee.  Therefore, neither BNYM nor

13  Quality Loan  has authority to pursue foreclosure activity against the Plaintiffs. A true and correct

14  copy of the Substitution of Trustee is attached hereto as **Exhibit "O"** and incorporated by reference

15  as though fully set forth herein.

16  40.  On October 17, 2014, Quality Loan issued a Notice of Default and Election to Sell

17  Under Deed of Trust against the Plaintiffs.  The NOD was recorded on October 21, 2014. The NOD

18  identifies BNYM as trustee for  the SAMI II Trust 2006-AR7 as the beneficiary.  A true and correct

19  copy of the NOD is attached hereto as **Exhibit "P"** and incorporated by reference as though fully

20  set forth herein. Quality Loan is an invalid trustee and BNYM is an invalid beneficiary.  Therefore,

21  the NOD is fraudulent, null and void and **there is no default under California's non-judicial**

22  **foreclosure statute!**

23  41.  On January 23, 2015, Quality Loan executed a Notice of Trustee's Sale of Plaintiffs'

24  property **scheduling a foreclosure sale for March 9, 2015**. The Notice of Sale was recorded on

25  January 26, 2015. A true and correct copy of the Notice of Trustee's Sale is attached hereto as

26  **Exhibit "Q"**  and incorporated by reference as though fully set forth herein.  As the Notice of Sale

27  flows from the fraudulent, null and void October, 2014 Notice of Default, it, too, is fraudulent, null

28  and void.

ENRIQUEZ  v. BANK OF AMERICA, et al.                    VERIFIED COMPLAINT

42.   Plaintiffs have honored the terms of the Settlement and Agreement with BANA. They turned over their home to BANA for $5000.00 in a "cash-for-keys" arrangement. They dismissed their lawsuit against BANA.  But BANA did not honor  the Settlement.  It required Plaintiffs to move out of their home and turn over the key thereto.  However, it continued to hold Plaintiffs responsible under the loan documents.  It never sought to have Plaintiffs removed from the title to the Subject Property. Plaintiffs are being held responsible for property that they have no right to possess or control.  BANA's conduct is shocking and unconscionable and cannot be tolerated in a civilized society.

43.   The entire chain of title to Plaintiffs' former Property is tainted by fraud. None of the defendants named to this action has authority to pursue foreclosure activity against the Plaintiffs. Any foreclosure sale of the Subject Property will be willful and oppressive and motivated by malice thereby subjecting the Defendants to punitive damages.

44.   As a result of Defendants' misconduct, Plaintiffs are unable to find a place to live.  They cannot purchase a vehicle or anything else on credit.  Mr. and Mrs. Enriquez are in their sixties. They agreed to give up their home for a mere $5000.00 in order to move on and rebuild their lives. But now, as a direct result of Defendants' unmitigated greed and insidious misconduct, Plaintiffs' lives are ruined.  Defendants, and each of them, should be held accountable to the Plaintiffs for their illegal conduct.

## COUNT I:  WRONGFUL FORECLOSURE
### (Against All Defendants)

45.   Plaintiffs re-allege and incorporate by reference the preceding paragraph as though fully set forth herein.

46.   A trustee is an agent of the beneficiary of a mortgage loan and the unlawful conduct of the trustee is imputed to its principal, the beneficiary.

47.   A trustee has a duty not to conduct an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a deed of trust.

48. A trustee is also liable to a trustor or mortgagor in California upon the basic principle of tort liability enunciated in Civil Code §1709 that every person is bound by law not to injure the

1    person or property of another or infringe on any of his rights. *See also* <u>Munger v. Moore,</u> (1970) 11

2    Cal. App.3d 1, 7-8.

3       49. Defendants have breached their duty to Plaintiffs and that breach is the proximate cause

4    of the damages suffered by the Plaintiffs.

5       50. MERS no longer held any interest in Plaintiffs' mortgage when it purported to assign the

6    beneficial interest under the deed of trust together with the debt (Note) to Chase, in its capacity as

7    trustee of the SAMI II Trust 2006-AR7 in 2011. Therefore the assignment is null and void. It is also

8    null and void because MERS does not hold any interest in property and cannot assign a deed of trust

9    in its own name. MERS is absolutely prohibited from transferring the debt secured by the deed of

10   trust. As the security instrument (DOT) follows the note, but not *vice versa*, it was legally

11   impossible for MERS to transfer only Plaintiffs' deed of trust to the SAMI II Trust 2006-AR7. The

12   transfer of a deed of trust but not the note is a legal nullity. The assignment is but a thinly veiled

13   attempt to cover up the botched securitization of Plaintiffs' mortgage five years earlier.

14       51. The attempted assignment of Plaintiffs' deed of trust and note by BANA to Nationstar

15   on July 29, 2013, is similarly fraudulent, null and void as BANA has never been in the chain of title

16   to Plaintiffs' mortgage. The assignment was made without any authority whatsoever.

17       52. The Substitution of Trustee executed on July 14, 2014 by Defendant Nationstar, as

18   attorney-in-fact for The Bank of New York Mellon as successor trustee for the SAMI II Trust,

19   Mortgage Pass-through Certificates, Series 2006-AR7, purported to substitute Quality Loan Service

20   Corporation as trustee under Plaintiffs' deed of trust. However, Defendant BNYM was not the

21   beneficiary of record when the substitution was attempted. Even though the July 29, 2013

22   assignment to Nationstar is fraudulent, null and void, title does not automatically revert back to

23   BNYM as trustee for the SAMI II Trust 2006-AR7. Cal. Civ. Code section 2934a.(a)(1)(A) requires

24   that all beneficiaries execute the Substitution of Trustee. As BNYM, as trustee for the MBS trust,

25   was not a valid beneficiary when the substitution of executed, the substitution is null and void and

26   Quality Loan is not a duly substituted trustee.

27       53. The Notice of default issued by Quality loan on behalf of Defendant BNYM as trustee

28   for the SAMI II Trust 2006-AR7, is fraudulent, null and void as BNYM is an invalid beneficiary and

1    Quality Loan is not a duly appointed trustee under Plaintiffs' deed of trust.  Therefore, **there has**

2    **been no statutory default**.

3        54.    The Notice of Trustee's Sale executed by Quality Loan on January 23, 2015 flows from

4    the illegal and void Notice of Default and is, similarly, null and void.  If the foreclosure sale

5    scheduled for March 9, 2015 proceeds, it will be willful and oppressive and motivated by

6    defendants' malice toward the Plaintiffs.

7        55.    Nationstar  has violated Cal. Civil Code sections 2924.17(a) and (b) that require that

8    before filing a notice of default, notice of sale, assignment of deed of trust or substitution of trustee,

9    "a mortgage servicer shall insure that it has reviewed competent and reliable evidence to substantiate

10   the borrower's default and the right to foreclosure including the borrower's loan status and loan

11   information".  As explained in the preceding paragraphs, the July 14, 2014 Substitution of Trustee,

12   the October 17, 2014 Notice of Default and the January 23, 2015 Notice of Trustee's Sale, all

13   executed after Section 2924.17 became law,  are invalid and void documents. Therefore, Nationstar

14   violated its duty of care under section 2924.17.

15       56.    Defendants' egregious violations of California's non-judicial foreclosure statute and

16    common law constitute civil fraud under Cal. Civ. Code sections 1572, 1708, 1709, 1710

17   2924(a)(6) and criminally actionable fraud under Cal. Penal Code sections 115 and 532(f)(a). These

18   knowing, blatant violations of law have served to deprive Plaintiffs of their constitutional due

19   process rights guaranteed by the U.S. Constitution and Art. I section 7 of California's Constitution.

20       57.    In initiating and pursuing the aforementioned illegal and fraudulent foreclosure

21    proceedings, MERS, Nationstar, BANA, and BNYM  have acted with willful oppressiveness and

22   malice toward the Plaintiffs.

23       58.    Plaintiffs have suffered damages proximately caused by the illegal and fraudulent

24   foreclosure activities against them by Defendants, including but not limited to, the imminent loss of

25   their real property (of which they have been wrongfully dispossessed), the loss of their down

26   payment on the loan and. increased costs and fees assessed against them associated with the

27   wrongful foreclosure activities. Plaintiffs continue to be assessed homeowner association fees.  To

28   date, they have been assessed $11,000 in HOA fees since they were dispossessed of the property by

BANA.  Additionally, Plaintiffs have suffered severe emotional distress.  Furthermore, Plaintiffs are unable to rent a place to live because their creditworthiness has been destroyed as a result of the illegal foreclosure activities of the Defendants. Plaintiffs have had to pay the costs of retaining a forensic mortgage loan auditor and attorney to investigate the fraudulent and otherwise illegal activities of the defendants .   Plaintiffs are entitled to, and seek, punitive damages against MERS, BANA, Nationstar and BNYM as a result of the illegal, fraudulent and willfully oppressive foreclosure activities against Plaintiffs that defendants personally conducted.

**WHEREFORE,** Plaintiffs request judgment in their favor and an order of the Court:

(a) Awarding compensatory damages in an amount to be proved at trial;

(b) Emotional distress damages in an amount to be proved at trial; and

(c) Punitive damages in an amount sufficient to deter similar conduct on the part of the Defendants in the future.

## COUNT II:  QUIET TITLE
### (Against Nationstar and BNYM)

59.    Plaintiffs re-allege and incorporate the preceding paragraphs by reference as though fully set forth herein.

60.     Plaintiffs are, and at all times herein mentioned were, the owners entitled to exclusive possession of the real property located at 2836 Pristine Way, Brentwood,  Contra Costa County, California 94513.  The full legal description of the Subject Property is attached to the Deed of Trust as Exhibit A.  *See* Exhibit "A" hereto.

61.    Defendant BNYM claims to hold the beneficial interest in Plaintiffs' deed of trust as trustee for the SAMI II Trust 2006-AR7. *See, e.g.,* Notice of Default (Exhibit "P"). Defendant Nationstar is the current beneficiary of record. *See* August 13, 2013 Assignment (Exhibit "N"). These  Defendants' claims are adverse to those of Plaintiffs because neither of these defendants is a holder of the NOTE or DOT, neither can prove any interest in the NOTE or DOT or that the NOTE is secured by the DOT, as well as for the reasons set forth in the causes of action *supra* and *infra*. As such, neither of these defendants has a right, title, lien, or interest in the Subject Property.

62.    Plaintiffs' title to the Subject Property is superior to that of BNYM because it derives from the deed of trust and promissory note executed on June 15, 2006.  As explained throughout this

ENRIQUEZ  v. BANK OF AMERICA, et al.                                                    VERIFIED COMPLAINT

1     Complaint, BNYM never received effective assignment of Plaintiffs' mortgage loan during the

2     securitization process. Moreover, MERS had no authority to assign Plaintiffs' deed of trust and/or

3     note to BNYM , as trustee, in 2011. Therefore, BNYM holds no interest in either the note or deed

4     of trust.

5        63. Plaintiffs' title to the Subject Property is superior to that of Nationstar because this

6     Defendant is not a valid noteholder, beneficiary or a person entitled to enforce Plaintiffs' mortgage

7     loan. Although Nationstar is the current beneficiary of record, BANA had no interest whatsoever to

8     convey to Nationstar on July 29, 2013. Therefore, the assignment is fraudulent, null and void and

9     Nationstar holds no valid interest in Plaintiffs' mortgage loan.

10        64. Plaintiffs seeks to quiet title against the claims of Defendants Nationstar and BNYM and

11     all persons, known and unknown, claiming any legal or equitable right, title, estate, lien, or adverse

12     interest in the Subject Property as of the date the Verified Complaint was filed (Cal. Code Civ. Proc.

13     section760.020). Defendants Nationstar and BNYM claim an interest in the property adverse to

14     Plaintiffs herein. However, the claim of said Defendants is without any right whatsoever, and said

15     Defendants have no legal or equitable right, claim, or interest in the property. Plaintiffs therefore

16     seek a declaration that the title to the Subject Property is vested in Plaintiffs alone, free and clear of

17     encumbrances in favor of Defendants and persons known and unknown, and that the Defendants

18     herein and persons known and unknown, and each of them, be declared to have no estate, right, title,

19     lien or interest in the Subject Property and that said Defendants and persons known and unknown,

20     and each of them, be forever enjoined from asserting any estate, right, title, lien or interest in the

21     Subject Property adverse to Plaintiffs herein. Plaintiffs seek an order from this court instructing the

22     clerk of the court to execute in recordable form a deed of reconveyance to Plaintiffs' Property.

23        65. Plaintiffs are not required to tender any outstanding mortgage debt because the

24     Defendants never had, and currently do not have, standing to collect the debt, because the

25     foreclosure has not yet occurred and because the amount of the debt is more than offset by Plaintiffs'

26     damages.

27        **WHEREFORE**, Plaintiffs pray for judgment against the Defendants and each of them as

28     hereinafter set forth.

ENRIQUEZ v. BANK OF AMERICA, et al.             VERIFIED COMPLAINT

## COUNT III: BREACH OF CONTRACT
### (Against BANA)

66.   Plaintiffs re-allege and incorporate the preceding paragraphs by reference as though fully set forth herein.

67.   Plaintiffs and BANA entered into a contract styled as a "Settlement and Agreement" dated July 23, 2012.  The contract was fully executed on September 13, 2012. *See* Exhibit "H".

68.   Under the  terms of the contract, Plaintiffs were required to: 1)  to execute a Request for Dismissal With Prejudice of all claims against BANA asserted in the Contra Costa Superior Court action, Case No. MSC11-02293 and  2)  vacate the Property in broom swept condition no later than midnight on August 31, 2012. Exhibit "H", Para. 2.A and C. Plaintiffs fulfilled their obligations under the contract.  *See* Exhibits  "I" and "J".

69.   Under the terms of the contract, Defendants were required to pay to the Plaintiffs $5000.00 within 10 days of receipt of the Request for Dismissal With Prejudice.  Upon endorsement of the Request for Dismissal, Defendants were required to provide a copy to the Plaintiffs. Plaintiffs provided Defendants with the executed Request for Dismissal With Prejudice whereupon BANA's attorney sent a check in the amount of $5000.00 payable to Plaintiffs to Plaintiffs' attorney. *See* Exhibit "K".

70.   The intention of all parties was that, in vacating the property and turning the keys over to BANA, Plaintiffs were relinquishing all title to, and interest in, the Subject Property.   This intention is evidenced by the language in Paragraph 2.C which provides:  "[s]hould Plaintiffs fail to vacate the Property by midnight, August 31, 2012, Plaintiffs shall reimburse all costs, daily rental fees, and attorney's fees related to any resulting eviction proceeding incurred by Defendant or an entity chosen by Defendant to prosecute the eviction of Plaintiffs".

71.   The foregoing language makes it crystal clear that, that upon executing the contract, Plaintiffs would have the status of tenants- not owners- subject to eviction and rental fees if they failed to vacate the Subject Property by August 31, 2012.

72.   BANA breached its obligation under the contract to remove Plaintiffs from the title to the Subject Property. This breach is material.

73.   Plaintiffs have performed all obligations under said contract and Defendant BANA is not excused from performing thereunder.

74.   Plaintiffs have suffered harm caused by BANA's breach of the Settlement and Agreement.  The harm includes, but is not limited to, imminent foreclosure which would have been avoided had BANA complied with the terms of the contract, assessment of fees and costs including inspection fees, property maintenance fees, legal fees, monthly mortgage payments, default advances paid by the servicer and lender placement homeowner's insurance costs. Additional harm suffered by Plaintiffs as a result of BANA's breach are the inability to rent a place to live due to the damage to their credit caused by the alleged default status of their mortgage loan following execution of the contract and the inability to purchase anything on credit.  Specifically, Plaintiffs are unable to purchase a new automobile and must pay for equipment used in their optical sales business in cash. Plaintiffs continue to be assessed homeowner association fees in connection with the Subject Property.  They have been assessed at least $11,000 in HOA fees since BANA took back the Property.  Plaintiffs have suffered, and continue to suffer, severe emotional distress due to their inability to rent a place to live (they currently squat in the back of their shop) and their inability to rebuild their lives due to their low credit score and chronic lack of funds because they have to pay for expensive items for their business in cash.  Plaintiffs suffer from shame, extreme anxiety and sleeplessness.  They avoid contact with friends and family due to the shame they feel over their homelessness.

**WHEREFORE,** Plaintiffs pray for an order awarding compensatory and emotional distress damages in an amount to be proved at trial.

## COUNT IV: FRAUD
### (Against MERS, BANA, Nationstar, and BNYM)

75.   Plaintiffs re-allege and incorporate the preceding paragraphs by reference as though fully set forth herein.

76.   On May 12, 2011, Cynthia Santos, Assistant Secretary of  MERS, executed an Assignment of Deed of Trust purporting to grant, sell, assign and transfer "all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein

1   described and the money due and to become due thereon with interest and all rights accrued or to

2   accrue under said Deed of Trust" to The Bank of New York Mellon f/k/a The Bank of New York, as

3   successor trustee to JPMorgan Chase Bank, N.A., as Trustee for the holders of SAMI II Trust 2006-

4   AR7, Mortgage Pass-through Certificates, Series 2006-AR7.  *See* Exhibit "C".  The Assignment was

5   prepared by Lori Fitch, 450 E. Boundary St, Chapin, SC   29036, tele: 888-603-9011.   The

6   Assignment was recorded in the Official Records of Contra Costa County on May 17, 2011 at the

7   request of Bank of America.  *See id.*  As alleged above, MERS no longer held any interest in

8   Plaintiffs' mortgage loan to convey to anyone in 2011.   As also alleged above, MERS has no

9   authority to assign the debt (Note). Defendants MERS, BANA and BNYM, in concert with one

10   another, orchestrated a scheme to defraud Plaintiffs by filing the  fraudulent and void Assignment to

11   cover up the failed securitization of Plaintiffs' mortgage loan in 2006.

12   77. On July 23, 2012, Plaintiffs executed Settlement and Agreement with BANA ("the

13   contract") resolving the litigation initiated on September 29, 2011 as to BANA. Kelly Thompson

14   signed the document on behalf of BANA on September 13, 2012. *See* Exhibit "H".  The contract sets

15   forth a "cash for keys" arrangement whereby BANA agreed to pay Plaintiffs $5000.00 if they

16   vacated the Subject Property by midnight on August 31, 2012 and dismissed the claims asserted

17   against BANA in the litigation. The contract provides that, upon execution of the  contract, if

18   Plaintiffs held over, they would have the status of tenants and would be subject to the payment of

19   rent and eviction. *See* Exhibit "H", Paragraph 2.C. BANA breached its obligation under the contract

20   in that it dispossessed Plaintiffs of their property and accepted the keys to their Property but never

21   caused to have their names removed from title despite repeated requests by Plaintiffs that it do so.

22   As servicer of Plaintiffs' mortgage loan when the contract was executed, BANA had authority to

23   effect the  transfer the Property from the Plaintiff to the beneficiary.  However, BANA has refused

24   to have Plaintiffs removed from title and, also, have refused to return possession of the Subject

25   Property to the Plaintiffs who remain the owners of record.  BANA has thereby deliberately and

26   with malice defrauded Plaintiffs.

27   78. On July 29, 2013, Defendant BANA, falsely holding itself out as the "holder" of

28   Plaintiffs' deed of trust, directed Gerald M. Burrell, Assistant Vice President for BANA, to execute

ENRIQUEZ  v. BANK OF AMERICA, et al.                    VERIFIED COMPLAINT

1    An Assignment of Deed of Trust purporting to assign Plaintiffs' deed of trust and note to Defendant

2    Nationstar.   The Assignment was prepared by Marcus Jones, 16001 N. Dallas Pkwy, Addison, TX

3    75001; tele: 800-444-4302.  The Assignment was recorded in the Contra Costa County Recorder's

4    Office on August 13, 2013 at the request of BANA. *See* Exhibit "N". The Assignment is clearly

5    fraudulent, null and void.  BANA has never been in the chain of title to Plaintiffs' mortgage loan. At

6    the time of the fraudulent assignment to Nationstar, BANA held no interest whatever in Plaintiffs'

7    loan.  It was not even the loan servicer.  As BANA had no interest in Plaintiffs' mortgage loan to

8    convey to Nationstar on July 29, 2013, the assignment is null and void and Nationstar is not a valid

9    beneficiary.

10         79.  On July 16, 2014, Olivia McAdams, Assistant Secretary for Defendant Nationstar, as

11   attorney-in-fact for The Bank of New York Mellon as successor trustee for the SAMI II Trust,

12   Mortgage Pass-through Certificates, Series 2006-AR7, executed a Substitution of Trustee purporting

13   to substitute Quality Loan Service Corporation as trustee under Plaintiffs' deed of trust.   The

14   Substitution of Trustee was recorded in the Contra Costa County Recorder's Office July 29, 2014.

15   *See* Exhibit "O". The  document contains the following deliberately false statement: "WHEREAS,

16   the undersigned is the present Beneficiary under said Deed of Trust". However,  Defendant BNYM

17   was not the beneficiary of record when the substitution was attempted. Even though the July 29,

18   2013 assignment to Nationstar is fraudulent, null and void, title does not automatically revert back to

19   BNYM as trustee for the SAMI II Trust 2006-AR7. Cal. Civ. Code section 2934a.(a)(1)(A) requires

20   that all beneficiaries execute the Substitution of Trustee. As BNYM, as trustee, was not a valid

21   beneficiary when the substitution of executed, the substitution is null and void and Quality Loan is

22   not a duly substituted trustee.  Therefore, neither BNYM nor Quality Loan  has authority to pursue

23   foreclosure activity against the Plaintiffs.

24         80.   On October 17, 2014, Stephanie Fuentes, Assistant Secretary for Quality Loan Service

25   Corporation executed a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against

26   the Plaintiffs.  The NOD was recorded on October 21, 2014 in the Contra Costa Recorder's Office.

27   The NOD  falsely identifies BNYM as trustee for  the SAMI II Trust 2006-AR7 as the beneficiary.

28   *See* Exhibit "P"**.** The NOD contains the following false statements:

ENRIQUEZ  v. BANK OF AMERICA, et al.                                      VERIFIED COMPLAINT

1

2       the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as the agent for the trustee or beneficiary under a Deed of Trust

3       dated 6/15/2006.... Exhibit "P" at 2.

4       the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for

5       same, and has deposited with said duly appointed Trustee such deed of trust and all documents evidencing obligations secured thereby, and has declared and

6       does hereby declare all sums secured thereby immediately due and payable and

7       has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby. See, Exhibit "P" at 3.

8

9   Quality Loan is an invalid trustee and BNYM is an invalid beneficiary. Therefore, the NOD is

10 fraudulent, null and void and **there is no default under California's non-judicial foreclosure**

11 **statute.**

12     81. On January 23, 2015, Quality Loan Service Corp. by Christine Bitanga, as Authorized

13 Agent, executed a Notice of Trustee's Sale of Plaintiffs' property **scheduling a foreclosure sale for**

14 **March 9, 2015**. The Notice of Sale was recorded in the Contra Costa County Recorder's Office on

15 January 26, 2015 at the request of Quality Loan. The Notice contains the following deliberately false

16 statement: "YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 6/15/2006". *See*

17 Exhibit "Q" at 1. As the October , 2014 Notice of Default is fraudulent, null and void, there is no

18 default under California's non-judicial foreclosure statute. As the Notice of Sale flows from the

19 fraudulent, null and void October, 2014 Notice of Default, it, too, is fraudulent, null and void.

20     82. All the documents described in this Count IV were executed by the defendants with the

21 intent to defraud Plaintiffs and for the purposed of pursuing foreclosure against the Plaintiffs

22 without any authority to do so.

23     83. Plaintiffs justifiably relied on the false assignments, the Substitution of Trustee, NOD

24 and Notice of Trustee's Sale and the false statements made therein, as they appeared to be valid land

25 records. Had Plaintiffs been aware that the assignments are fraudulent and void, they would have

26 taken action to protect their property and due process rights before the 2014 NOD was issued

27 thereby initiating foreclosure proceedings against them.

28     84. Plaintiffs justifiably relied on the terms of the Settlement and Agreement and BANA's

ENRIQUEZ v. BANK OF AMERICA, et al.                               VERIFIED COMPLAINT

obligations thereunder as it was executed by BANA and approved by Clayton Gaddis, BANA's attorney. If Plaintiffs had been aware of the fraud perpetrated against them by BANA in taking possession of the Subject Property without conducting formal foreclosure and eviction proceedings but without taking Plaintiffs' off title as clearly contemplated by the Settlement and Agreement, they would not have signed the agreement, vacated their home and turned the keys to their home over to BANA.

85. Plaintiffs have suffered harm directly caused by Defendants' fraud. Specifically, the damages include, but are not limited to, the imminent loss of their real property (of which they have been wrongfully dispossessed), the loss of their down payment on the loan and. increased costs and fees assessed against them associated with the wrongful foreclosure activities including inspection fees, property maintenance fees, legal fees, monthly mortgage payments, default advances paid by the servicer and lender placement homeowner's insurance costs.   Additionally, Plaintiffs have suffered severe emotional distress.  Furthermore, Plaintiffs are unable to rent a place to live because their creditworthiness has been destroyed as a result of the illegal foreclosure activities of the Defendants.  Plaintiffs continue to be assessed homeowner association fees in connection with the Subject Property.  To date, they have been assessed at least $11,000 in outstanding HOA fees. They are unable to purchase anything on credit and, therefore, cannot purchase a new automobile. In addition, Plaintiffs are required to pay for expensive business equipment in cash. Plaintiffs have had to pay the costs of retaining a forensic mortgage loan auditor and attorney to investigate the fraudulent and otherwise illegal activities of the defendants .

86.  Defendants, and each of them, have acted intentionally and with malice and oppression against Plaintiffs entitling Plaintiffs to an award of exemplary and punitive damages.

**WHEREFORE, Plaintiffs pray for judgment as set forth below.**

## COUNT V: VIOLATION OF CAL. CIVIL CODE SECTION 2924.17
### (Against Nationstar)

87.  Plaintiffs refer to and incorporate herein by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

88.   Section 2924.17(a) provides in pertinent part that:

ENRIQUEZ  v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

[a] notice of default, notice of sale, assignment of deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

Section 2924.17(b) states that:

Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall insure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose including the borrower's loan status and loan information.

The above-recited provisions were added to the non-judicial foreclosure statute pursuant to the recently enacted California Homeowner's Bill of Rights Act designed to address widespread violations of law by the banking industry.

89. As explained in the preceding paragraphs, the July 14, 2014 Substitution of Trustee, the October 17, 2014 Notice of Default and the January 23, 2015 Notice of Trustee's Sale, all executed after Section 2924.17 became law, are invalid and void documents. Therefore, Nationstar violated its duty of care under section 2924.17.

90. As a result of Nationstar's violation of §§2924.17(a) and (b), Plaintiffs suffered damages including , but not limited to, the imminent loss of their real property, the loss of their down payment on the loan and increased costs and fees assessed against them associated with the wrongful foreclosure activities.

**WHEREFORE, Plaintiffs pray for judgment in their favor and an order of the Court**:

(a) Awarding compensatory damages in an amount to be proved at trial;

(b) Awarding any available statutory damages, including damages available under any California private attorney general statutes; and

(c) Enjoining all foreclosure activities until violations of section 2924.17 are remedied.

## COUNT VI: VIOLATION OF BUSINESS AND PROFESSIONS CODE, section 17200 *et seq.*
(Against all Defendants)

91. Plaintiffs refer to and incorporate by this reference the allegations contained in the foregoing paragraphs as though set forth fully herein.

ENRIQUEZ  v. BANK OF AMERICA, et al.                                           VERIFIED COMPLAINT

92.  California Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, which means and includes any "fraudulent business practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of section 17200.

93.  As more fully described above, the acts and practices of Defendants are likely to deceive, constituting a fraudulent business act or practice. *See*, in particular, foregoing Counts I, III, IV and V.  This conduct is ongoing and continues to this day.

94.  Specifically, and as set forth with greater particularity in preceding paragraphs, the named Defendants, and each of them, have engaged and are engaging in deceptive business practices with respect to mortgage servicing and  assignments of deeds of trust  and related matters by*, inter alia*:

   A.  Executing documents without the legal authority to do so (MERS, BANA, Nationstar, BNYM);

   B.  Acting as beneficiaries and trustees without the legal authority to do so (MERS, BNYM, BANA, Nationstar);

   C.  Failing to comply with California Civil Code sections 1572, 1708 and1709 (MERS, BNYM, BANA, Nationstar);

   D.  Violating provisions of the non-judicial foreclosure statute set forth at California Civil Codes sections 2924(a)(1) and (a)(1)(C) (MERS) and sections 2024 (a)(1), (a)(1)(C) and 2924(a)(6) (BNYM, BANA, Nationstar);

   E.  Violating Cal. Civ. Code section 2924.17 (Nationstar)

   F.  Violating provisions of the non-judicial foreclosure statute set forth at California Civil Code section 2934a(a)(1) (BNYM); and

   G.  Committing a felony under section 115 of the California Penal Code (all Defendants);

   H.  Committing mortgage fraud within the meaning of Cal. Penal Code section 532(f)(a) (MERS, BANA, BNYM, Nationstar); and

   I.  Engaging in other deceptive practices, including those which may be uncovered during the course of discovery.

95.  Plaintiffs allege that the named Defendants' misconduct, as alleged herein, gave, and has given, Defendants, and each of them, an unfair competitive advantage over their competitors. The scheme implemented by Defendants, in collusion with one another, is specifically designed to defraud California consumers and enrich Defendants at the expense of consumers in this State.

96. By reason of the foregoing, Defendants should be enjoined from continuing such practices pursuant to California Business & Professions Code sections 17203 and 17204.  Plaintiffs have suffered injury in fact, including but not limited to, the payment of mortgage payments, for years, to BOA which has no authority to collect them, and fees paid to a forensic mortgage loan auditor and attorney to uncover Defendants' unfair, fraudulent and unlawful business practices. Undoubtedly, other members of the public, similarly have fallen victim to Defendants' deceptive schemes, and are likely to be injured as well.

97.  The harm to Plaintiffs and to members of the general public outweighs the utility (if any) Defendants' policies and practices. Consequently, their policies and practices constitute unlawful business acts or practices within the meaning of Business & Professions Code section 17200.  Moreover, the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

98.  Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under Business & Professions Code section, *et seq.* and related sections and under any California private attorney general statutes. The acts and practices described in the foregoing paragraphs are unfair and violate the Business & Professions Code because they constitute violations of all the statutes previously listed above.

**WHEREFORE, Plaintiffs pray the Court for an Order and Decree that**:

A.   Pursuant to Business & Professions Code section 17203, Defendants MERS, BNYM and BANA and Nationstar, their successors, agents and assigns, representatives, employees, and all persons who act in concert with them, are permanently enjoined from committing all acts of unfair competition in violation of section 17200 including, but not limited to, the violations identified in Counts I, III,VI and V of Plaintiffs' Complaint;

B.   Plaintiffs are entitled to an award of statutory attorney's fees;

C.   Plaintiffs are entitled to statutory damages including damages available under relevant private attorney general statutes, including  CCP section 1021.5;

D.   Plaintiffs are entitled to the cost of suit; and

E.   Any other relief the Court deems just and proper.

ENRIQUEZ  v. BANK OF AMERICA, et al.                                                VERIFIED COMPLAINT

1

**PRAYER FOR RELIEF**

2      **WHEREFORE,** Plaintiffs pray for judgment against the Defendants and each of them as set

3  forth below.   Damages claimed exceed $75,000.

4      1.   For an order forever enjoining the defendants, and each of them, their agents,

5  representatives, successors and assigns, from initiating activity against the Plaintiffs to enforce their

6  mortgage loan relating to the Subject Property;

7      2.    For an order compelling said Defendants, and each of them, to transfer legal title of the

8  Subject Property to Plaintiffs  herein as sole owners in fee simple;

9      3.   For an order restoring possession of the Subject Property to the Plaintiffs;

10      4.   For an order adjudging BANA to be in breach of the Settlement and Agreement it

11  executed with the Plaintiffs;

12      5.   For a finding and determination that Plaintiffs are the rightful holders of the title to the

13  Property and that Defendants herein, and each of them, have no estate, right, title, lien or interest in

14  said Property;

15      6.   For a judgment forever enjoining said defendants, and each of them, from claiming any

16  estate, right, title, lien or interest in the Subject Property;

17      7.   For a judgment that not one of the Defendants has any unencumbered legal interest in

18  both the NOTE and DOT;

19      8.   Plaintiffs further pray that the Court issue an Order and Decree canceling the

20  Assignment of Deed of Trust recorded on May 17, 2011, the Assignment of Deed of Trust recorded

21  on August 13, 2013, the Substitution of Trustee recorded on July 29, 2014, The Notice of Default

22  recorded on October 21, 2014 and the Notice of Trustee's Sale recorded on January 26, 2015 finding

23  same void as to Plaintiffs;

24      9.   For an injunction enjoining all of the Defendants from engaging in the unfair, deceptive

25  and unlawful practices described in Count V, *supra;*

26      10.  For a finding that Defendant Nationstar has violated Cal. Civ. Code section 2924.17;

27      11.  For general, consequential and special damages according to proof;

28      12.  For punitive damages;

ENRIQUEZ  v. BANK OF AMERICA, et al.                                    VERIFIED COMPLAINT

13. For statutory damages;

14. For emotional distress damages;

15. For reasonable attorney's fees and costs;

16. For the costs of suit; and

17. For any other relief which the Court deems just and proper.


Dated:  February 28, 2015                **LAW OFFICES OF MARK W. LAPHAM**


                                     //s/Mark W. Lapham_____
                                     Mark W. Lapham
                                      Attorney for the Plaintiffs
                                     ROMUALDO ENRIQUEZ OLIVIA ENRIQUEZ

ENRIQUEZ  v. BANK OF AMERICA, et al.                              VERIFIED COMPLAINT