IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMUALDO ENRIQUEZ and OLIVIA ENRIQUEZ,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>　　　　Defendants. | No. C-15-0940 MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING COMPLAINT; AFFORDING PLAINTIFFS LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

　　Before the Court is the Motion to Dismiss, filed March 30, 2015 and renoticed on April 3, 2015, on behalf of defendants Bank of America, N.A. ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Nationstar Mortgage LLC ("Nationstar"), and The Bank of New York Mellon f/k/a The Bank of New York as trustee for the Structured Asset Mortgage Investments II Trust 2006-AR7 Mortgage Pass-Through Certificates, Series 2006-AR7 ("BNYM").  Plaintiffs Romualdo and Olivia Enriquez have filed opposition,[1] to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' respective written submissions, VACATES the hearing scheduled for May 22, 2015, and rules as follows.

---

[1] Plaintiffs failed to provide the Court with a chambers copy of their opposition. Nonetheless, the Court has considered it.  For future reference, plaintiffs are reminded that, pursuant to Civil Local Rule 5-1(e)(7) and the Court's Standing Orders, parties are required to provide for use in chambers one paper copy of each document that is filed electronically.

**BACKGROUND**

Plaintiffs allege that they own real property on Pristine Way in Brentwood, California (see Compl. ¶ 1), and that, in June 2006, they executed a "mortgage loan consisting of a Promissory Note, Deed of Trust [and other documents]," which loan was "originated by" American Mortgage Express Corp. ("AMEC") and named MERS as the beneficiary (see Compl. ¶ 7, Ex. A). Plaintiffs also allege that, thereafter, ownership of the note and deed of trust was transferred six times. (See Compl. ¶¶ 19, 24, 37.) Plaintiffs further allege that said assignments caused the "securitization of [p]laintiffs' mortgage" to "fail[ ]." (See Compl. ¶ 26.)

More specifically, according to plaintiffs, the first three transfers were invalid because "there exist[ed] no assignment of the mortgage," in violation of a "securitization" agreement between the parties to said transfers (see Compl. ¶¶ 19, 23), the fourth transfer failed because the transferee was "assigned [p]laintiffs' mortgage loan" after a deadline set forth in the securitization agreement (see Compl. ¶¶ 12, 20, 22),[2] the fifth transfer, which was to BNYM, was "null and void" because the assignor, MERS, did not hold an interest in the note and deed of trust at the time of the transfer (see Compl. ¶¶ 24, 25), and the sixth transfer, which was to Nationwide, was "null and void" because the assignor, BANA, had "never been in the chain of title to [p]laintiffs' mortgage loan" (see Compl. ¶ 37). As a consequence, plaintiffs allege, "the present beneficiary, mortgagee and secured lender [are] undocumented and unknown." (See Compl. ¶ 23.)

In 2011, plaintiffs filed a complaint in state court "against AMEC, BANA and other parties for fraud and related misconduct pertaining to the origination of their mortgage loan." (See Compl. ¶ 29; see also Defs.' Req. for Judicial Notice Ex. B.)[3] On July 23,

---

[2] The parties to the first four transfers are not named as defendants in the instant action.

[3] Defendants' unopposed request for judicial notice of plaintiffs' state court complaint is hereby GRANTED. See Rosales-Martinez v. Palmer, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that [a court] may take judicial notice of judicial proceedings in other courts.").

1 2012, plaintiffs and BANA entered into a "Settlement and Agreement" resolving the state
2 court action as to BANA. (See Compl. ¶ 34, Ex. H.) Plaintiffs allege that, as required by a
3 provision in the settlement agreement, they "vacated the property on August 31, 2012 and
4 left it in a broom swept condition." (See Compl. ¶ 35, Ex. H at 2.) Plaintiffs also allege that,
5 thereafter, BANA, Specialized Loan Servicing ("SLS") and Nationstar "refused to take
6 [p]laintiffs' names off title to their former property and continued to assess foreclosure fees
7 and costs, as well as 'default' advances made by the servicer" (see Compl. ¶ 36),[4] that SLS
8 and Nationstar "charged the cost of lender-placed homeowner's insurance policies to the
9 [p]laintiffs" (see id.), and that plaintiffs have been charged "homeowner association fees" of
10 "at least $11,000" (see Compl. ¶ 74).
11       On October 17, 2014, Quality Loan Service Corporation ("Quality"), whom BNYM
12 had earlier named as trustee, "issued a 'Notice of Default and Election to Sell Under Deed
13 of Trust'" ("Notice of Default"), and, on January 23, 2015, "executed a Notice of Trustee's
14 Sale of [p]laintiffs' property scheduling a foreclosure sale for March 9, 2015." (See Compl.
15 ¶¶ 39-41.)[5]
16       Based on the above, plaintiffs allege six causes of action, each arising under state
17 law.
18 **DISCUSSION**
19       Defendants argue that each of plaintiffs' six causes of action are subject to
20 dismissal. The Court next considers each cause of action in turn.
21 **A. Count I - "Wrongful Foreclosure"**
22       In Count I, plaintiffs allege that the Notice Of Default and Notice of Trustee's Sale,
23 which, as noted above, were issued on October 17, 2014 and January 23, 2015,

---

25     [4]According to plaintiffs, BANA was the "purported servicer" until May 1, 2013, when it transferred "servicing rights to [SLS]." (See Compl. ¶¶ 9, 36.) Plaintiffs allege that, as of April 1, 2014, Nationwide became the servicer. (See Compl. ¶ 9.)

27     [5]The complaint was filed three days prior to the scheduled foreclosure sale. According to the parties' respective memoranda filed in connection with the motion to dismiss, the foreclosure sale did not proceed as scheduled. (See Defs.' Mot. at 12:18; Pls.' Opp. at 7:27; Defs.' Reply at 1:26-28.)

3

respectively, are "null and void" (see Compl. ¶¶ 53, 54), and that, as a consequence, defendants lack authority to proceed with a foreclosure. According to plaintiffs, although BNYM had, on July 16, 2014, "purported to substitute Quality [ ] as trustee under [p]laintiffs' deed of trust," the substitution was "null and void" because BNYM "was not the beneficiary of record when the substitution was attempted." (See Compl. ¶ 39.)

Defendants argue plaintiffs lack standing to challenge the foreclosure on the ground plaintiffs raise here, specifically, an assertion that the foreclosing entity, or its trustee, has no authority to institute a foreclosure proceeding. The Court agrees.

The Ninth Circuit Court of Appeals has held that "[u]nder the majority rule in California," which majority rule the Ninth Circuit follows, "borrowers lack standing to challenge the authority of the foreclosing entity." See Hunt v. U.S. Bank N.A., 593 Fed. Appx. 730, 731 (9th Cir. 2015).[6] As the Ninth Circuit explained, "even if [an] improper securitization occurred or the assignments were fraudulent, the [plaintiffs] are not a party to those transactions and are not the victims." See id. at 731 (affirming order finding plaintiffs "lack[ed] standing to challenge the authority of [defendants] to foreclose"); see also In re Davies, 565 Fed. Appx. 630, 632-33 (9th Cir. 2014) (holding borrowers lack standing to challenge alleged violations of "pooling and servicing agreements" by transferors and transferees, because borrowers are "not parties" thereto); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 515 (2013) (affirming dismissal of claim challenging foreclosure on theory foreclosing entity lacked authority to foreclose and holding plaintiff borrower "may not assume the theoretical claims of hypothetical transferors and transferees for the purposes of showing a controversy of concrete actuality"; noting, "even

---

[6]Plaintiffs rely on the minority view set forth in Glaski v. Bank of America, N.A., 218 Cal. App. 4th 1079 (2013), an opinion the Ninth Circuit has characterized as "widely rejected" and not likely to be followed by the California Supreme Court, see Hunt, 593 Fed. Appx. at 731; In re Davies, 565 Fed. Appx. 620, 633 (9th Cir. 2014). Moreover, the holding in Glaski, which is based on New York trust law, has been expressly rejected by the Second Circuit as contrary to New York case law. See Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79, 80-81, 90 (2nd Cir. 2014) (holding borrowers lack standing under New York trust law to challenge foreclosure by asserting parties to assignment agreements failed to comply therewith).

if any subsequent transfers of the promissory note were invalid, [the plaintiff] is not the victim of such invalid transfers because [the plaintiff's] obligations under the note remained unchanged") (internal quotation and citation omitted).

Accordingly, Count I is subject to dismissal without leave to amend.

**B. Count II - "Quiet Title"**

In Count II, plaintiffs allege that BNYM and Nationstar, which, as stated above, are alleged to be, respectively, the purported fifth and sixth assignees of the subject note and deed of trust, do not have any interest in the subject property. In particular, plaintiffs allege, BNYM did not receive "effective assignment of [p]laintiffs' mortgage loan during the securitization process" (see Compl. ¶ 62), and that the assignments to BNYM and Nationstar were "fraudulent and felonious" acts made to "cover up the botched securitization" (see Compl. ¶¶ 26, 59, 63).

For the reasons set forth above, the Court finds plaintiffs lack standing to challenge the assignments of the note and deed of trust.

Accordingly, Count II is subject to dismissal without leave to amend.

**C. Count III - "Breach of Contract"**

In Count III, plaintiffs allege BANA has failed to comply with its obligations under the settlement agreement executed in 2012. Under said agreement, plaintiffs were required, inter alia, to vacate the subject real property by August 31, 2012. (See Compl. Ex. H at 2.) Plaintiffs allege that they vacated the premises no later than August 31, 2012 (see Compl. ¶ 68), that BANA nonetheless failed to "remove [p]laintiffs from the title" (see Compl. ¶ 72), and that, as a result, plaintiffs have been charged fees and costs, such as "inspection fees, property maintenance fees, legal fees, monthly mortgage payments, default advances paid by the servicer and lender placement homeowner's insurance costs," as well as "homeowner association fees" (see Compl. ¶ 74).

Defendants, interpreting Count III as alleging that BANA has a contractual duty to "unilaterally . . . remove[ ] [plaintiffs] from title and place[ ] itself on title as the owner of record" (see Defs.' Mot. at 8-10), argue that no such obligation is included in the

1 settlement, and, moreover, that, under California law, the only way to take a defaulting
2 borrower off the title of real property, in the absence of the borrower's execution of a deed
3 transferring the property to the lender, is to foreclose on the property.[7]  Plaintiffs' opposition
4 fails to address defendants' interpretation of Count III, and, indeed, fails to address Count
5 III in any manner.

6      As the settlement agreement does not include a provision requiring BANA to
7 unilaterally remove plaintiffs from the title, and plaintiffs have identified no other provision
8 on which they rely, the Court finds Count III is subject to dismissal for failure to allege the
9 breach of a provision in the settlement agreement.  The Court next considers whether leave
10 to amend is proper.

11      Under California law, "[e]very contract imposes upon each party a duty of good faith
12 and fair dealing in its performance and its enforcement."  See Carma Developers
13 (California), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 371 (1992)
14 (internal citation and quotation omitted).  Here, plaintiffs may be able to plead facts to
15 support a claim that the failure to take steps to institute foreclosure proceedings until well
16 over two years after plaintiffs had vacated the premises constituted a breach of such
17 implied covenant. (See, e.g., Compl. ¶ 36 (alleging BANA and Nationstar passed on to
18 plaintiffs various fees and costs accruing during period between August 31, 2012 and
19 October 17, 2014, on which date foreclosure proceedings were instituted).)[8]

20      In that regard, it would appear that the parties to the settlement agreement intended
21 that plaintiffs would no longer have the obligations of a borrower/homeowner after August
22 31, 2012.  Specifically, given the parties' express agreement that plaintiffs were to vacate
23 the premises as of August 31, 2012, it would not appear likely that the parties at the same

---

[7] In the settlement agreement, plaintiffs conceded they were in default of their obligations under the loan.  (See Compl. Ex. H at 1.)

[8] Plaintiffs allege that Quality, which is not a defendant, instituted foreclosure proceedings.  (See Compl. ¶¶ 40-41.)  Although the connection between BANA and Quality is unclear from the complaint, defendants' motion to dismiss refers to "defendants" as having instituted the foreclosure.  (See Defs.' Mot. at 7:15-16.)

6

1 time intended that plaintiffs continue to pay, for well over two years, all expenses and costs
2 associated with continuing ownership.  Further, the settlement agreement provides that, if
3 plaintiffs failed to vacate by the date specified, plaintiffs would be liable for "all costs, daily
4 rental fees, and attorney's fees related to any resulting eviction proceeding instituted by
5 [BANA] or an entity chosen by [BANA] to prosecute the eviction of [p]laintiffs."  (See Compl.
6 Ex. H at 2.)  Such a provision is consistent with a mutual intent that plaintiffs be removed
7 from the title, as a mortgagor cannot, under California law, be evicted from real property,
8 see Francis v. West Virginia Oil Co., 174 Cal. 168, 170-71 (1917); rather, a mortgagor can
9 only be evicted if the lender first forecloses and the mortgagor, now having became a
10 former mortgagor, refuses to vacate, see, e.g., Evans v. Superior Court, 67 Cal. App. 3d
11 162, 170-71 (1977) (holding "purchaser at a trustee's sale" may bring unlawful detainer
12 action against former mortgagor who did not vacate after foreclosure).  In sum, although
13 the parties to the settlement agreement here at issue did not expressly set forth therein the
14 particular manner by which the removal of plaintiffs from the title would be accomplished,
15 plaintiffs nonetheless may be able to plead a claim for breach of contract.  See Digerati
16 Holdings, Inc. v. Young Money Entertainment, LLC, 194 Cal. App. 4th 873, 885 (2011)
17 (observing that, "[a]lthough breach of the implied covenant often is pleaded as a separate
18 count, a breach of the implied covenant is necessarily a breach of contract").

19 Accordingly, Count III is subject to dismissal, and the Court will afford plaintiffs leave
20 to amend to allege, if they can do so, a breach of the implied covenant of good faith and
21 fair dealing.

22 **D.  Count IV - "Fraud"**

23 In Count IV, plaintiffs allege the assignments of the note and deed of trust, as well
24 as the Notice Of Default and Notice of Trustee's Sale, were "fraudulent" (see Compl. ¶¶ 76,
25 78-81), and, additionally, that BANA "defrauded" plaintiffs in connection with the settlement
26 agreement (see Compl. ¶¶ 77, 84).

27 To the extent Count IV is based on a challenge to the assignments, as well as to the
28 Notice of Default and Notice of Trustee's Sale, Count IV is subject to dismissal for lack of

standing, for the reasons discussed above with respect to Count I, and will be dismissed without leave to amend.

To the extent Count IV is based on BANA's actions with respect to the settlement agreement, Count IV likewise is subject to dismissal. Plaintiffs' allegation, specifically, that had they "been aware of the fraud perpetrated against them by BANA," they "would not have signed the agreement" (see Compl. ¶ 84), suggests plaintiffs are endeavoring to allege they were fraudulently induced to enter into the settlement agreement. Plaintiffs fail to identify, however, any false statement made to them that caused them to enter the settlement agreement, let alone set forth facts meeting the other requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Fecht v. Price Co., 70 F.3d 1078, 1082-83 (9th Cir. 1995) (holding, to state cognizable fraud claim, plaintiff must comply with Rule 9(b), which requires, inter alia, "allegations of the time, place and nature of the alleged fraudulent activities" and "an explanation as to why the disputed statement was untrue or misleading when made") (internal quotations, citation and emphasis omitted). The Court will afford plaintiffs leave to amend, if they can do so, to identify with the requisite specificity any false statement that induced them to enter into the settlement agreement and to set forth all necessary facts to comply with Rule 9(b).

Accordingly, Count IV is subject to dismissal, with leave to amend for the limited purpose set forth above.

**E. Count V - "Violation of Cal. Civil Code Section 2924.17"**

In Count V, plaintiffs allege the Notice of Default and the Notice of Trustee's Sale are "invalid and void documents" (see Compl. ¶ 89), in light of the alleged "fraudulent" assignments of the notice and deed of trust (see Compl. ¶¶ 26, 87). For the reasons set forth above with respect to Count I, plaintiffs lack standing to bring such claim.

Accordingly, Count V is subject to dismissal without leave to amend.

**F. Count VI - "Violation of Business and Professions Code, Section 17200 et seq."**

In Count VI, plaintiffs allege defendants "have engaged and are engaging in deceptive business practices with respect to mortgage servicing and assignments of deeds

8

of trust and related matters." (See Compl. ¶ 94).

To the extent Count VI is premised on the allegedly fraudulent assignments of the note and deed of trust and allegedly fraudulent Notice of Default and Notice of Trustee's Sale (see Compl. ¶ 94A - 94.H), Count VI is subject to dismissal without leave to amend, for the reasons set forth above as to Count I.

To the extent Count VI may be based on some type of "other" unlawful practice (see Compl. ¶ 94.I), Count VI is subject to dismissal for failure to provide fair notice of a practice as to which plaintiffs have standing to assert a claim.

Accordingly, Count VI will be dismissed, and the Court will afford plaintiffs leave to amend to identify, if they can do so, an unlawful practice as to which they have standing.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED.

Any First Amended Complaint shall be filed no later than June 12, 2015.

In light of the above, the Case Management Conference is hereby CONTINUED from May 29, 2015 to August 28, 2015, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than August 21, 2015.

**IT IS SO ORDERED.**

Dated:  May 20, 2015

MAXINE M. CHESNEY
United States District Judge

9