United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ROMUALDO ENRIQUEZ and OLIVIA          No. C-15-0940 MMC
     ENRIQUEZ,
12                                          **ORDER GRANTING DEFENDANTS'**
                  Plaintiffs,               **MOTION TO DISMISS; AFFORDING**
13                                          **PLAINTIFFS LIMITED LEAVE TO**
          v.                                **AMEND; CONTINUING CASE**
14                                          **MANAGEMENT CONFERENCE**
     BANK OF AMERICA, N.A., et al.,
15
                  Defendants.
16   _____/

17

18        Before the Court is the Motion to Dismiss, filed June 8, 2015, on behalf of

19   defendants Bank of America, N.A. ("BANA") and The Bank of New York Mellon f/k/a The

20   Bank of New York as trustee for the Structured Asset Mortgage Investments II Trust 2006-

21   AR7 Mortgage Pass-Through Certificates, Series 2006-AR7 ("BNYM").  Plaintiffs Romualdo

22   and Olivia Enriquez have filed opposition, to which defendants have replied.  Having read

23   and considered the papers filed in support of and in opposition to the motion, the Court

24   rules as follows.[1]

25                              **BACKGROUND**

26        In the operative complaint, the First Amended Complaint ("FAC"), plaintiffs allege

27   that they own real property on Pristine Way in Brentwood, California (see FAC ¶ 1), that,

28
     _____

          [1]By order filed July 14, 2015, the Court took the matter under submission.

1    on June 15, 2006, they executed a "mortgage loan consisting of a Promissory Note, Deed

2    of Trust [and other documents]" (see FAC ¶ 6), that, on May 12, 2011, "all beneficial

3    interest under [p]laintiffs' deed of trust, together with the Note," was transferred to BNYM

4    (see FAC ¶ 10), and that, from July 1, 2011, to May 1, 2013, BANA was the "servicer" (see

5    FAC ¶ 8).

6         Plaintiffs also allege that, on September 29, 2011, they filed a complaint in state

7    court against "BANA and other parties for fraud and related misconduct pertaining to the

8    origination of their mortgage loan." (See FAC ¶ 11.) Plaintiffs further allege that, on June

9    27, 2012, they "appeared at the offices of [BANA's counsel] for their noticed depositions"

10   (see FAC ¶ 16), that, before the depositions commenced, counsel for BANA proposed that

11   the case be settled under certain terms, specifically, that "BANA was prepared to give

12   [p]laintiffs $5000.00 on the condition that they vacate the property by midnight on August

13   31, 2012" (see FAC ¶ 17), and that, after a counteroffer by plaintiffs was rejected, plaintiffs

14   accepted the offer as proposed by BANA's counsel (see FAC ¶¶ 18-19). Plaintiffs and

15   BANA thereafter entered into a written agreement, titled "Settlement and Agreement,"

16   resolving the state court action as to BANA. (See FAC ¶ 20, Ex. H.)

17        Plaintiffs allege that, as required by the settlement agreement, they "vacated the

18   property on August 31, 2012 and left it in a broom swept condition," they "dismissed BANA

19   from the [state court] lawsuit," and they "returned the key" to BANA. (See FAC ¶ 21.)

20   Plaintiffs also allege that, thereafter, BANA, paid plaintiffs $5000 (see FAC ¶ 34), but

21   "breached its obligation under the contract to remove [p]laintiffs from the title" (see FAC

22   ¶ 36). According to plaintiffs, given that they remain on the title, they have been assessed

23   "fees and costs including inspection fees, property maintenance fees, legal fees, monthly

24   mortgage payments, default advances paid by the servicer and lender placement

25   homeowner's insurance costs" (see FAC ¶ 40), as well as "at least $11,000 in HOA fees"

26   (see id.). Plaintiffs further allege they are unable to "rent a place to live due to the damage

27   to their credit caused by the alleged default status of their mortgage loan" (see FAC ¶ 40),

28   and have been "squatting in their optical retail business" (see FAC ¶ 24).

2

1    On October 17, 2014, Quality Loan Service Corporation, which BNYM had earlier

2  named as trustee, "issued a 'Notice of Default and Election to Sell Under Deed of Trust,'"

3  and, on January 23, 2015, "executed a Notice of Trustee's Sale of [p]laintiffs' property

4  scheduling a foreclosure sale for March 9, 2015."  (See FAC ¶¶ 26-27.)[2]

5    Based on the above, plaintiffs allege five causes of action, each arising under state

6  law.

7                                    **DISCUSSION**

8    Defendants argue that each of plaintiffs' five causes of action is subject to dismissal.

9  The Court next considers each cause of action in turn.

10  **A.  Count I - "Breach of Contract"**

11    In Count I, plaintiffs allege BANA failed to comply with its obligations under the

12  settlement agreement.

13    By order filed May 20, 2015, the Court dismissed plaintiffs' breach of contract claim

14  for failure to allege facts to support a finding that BANA breached the terms of the

15  settlement agreement, and afforded plaintiffs leave to amend to allege, if they could, facts

16  to support a claim that BANA, by assertedly failing to take steps to remove plaintiffs from

17  the title, breached the implied covenant of good faith and fair dealing.

18    Plaintiffs now allege that "[t]he intention of all parties [was] that, in vacating the

19  property and turning the keys over to BANA, [p]laintiffs were relinquishing all title to, and

20  interest in, the Subject Property" (see FAC ¶ 35), but BANA "never sought to have

21  [p]laintiffs removed from the title" (see FAC ¶ 28), and, consequently, "breached the implied

22  covenant of good faith and fair dealing in BANA's performance under the [s]ettlement

23  [a]greement" (see FAC ¶ 39).

24    Defendants contend Count I is subject to dismissal for two reasons.  First,

25  defendants argue, plaintiffs have not alleged facts to support a finding that BANA breached

26

27    [2]According to the parties' respective memoranda filed in connection with the instant

28  motion, the foreclosure sale did not proceed as scheduled and, at least, as of the time
briefing was complete, had not occurred.  (See Defs.' Mot. at 4:5-7; Pls.' Opp. at 5:25.)

1  the settlement agreement; in other words, according to defendants, plaintiffs have failed to

2  cure the deficiency identified in the Court's prior order.  Second, defendants argue, plaintiffs

3  have not alleged facts to support a finding that they incurred damages by reason of a

4  breach.

5        In support of their first argument, defendants interpret the FAC as alleging BANA

6  had a duty to "unilaterally" remove plaintiffs from the title.  (See Defs.' Mot. at 3:16.)

7  Defendants assert that BANA's failure to do so cannot constitute a breach, as California

8  law prohibits a lender from unilaterally removing a borrower from the title.  Rather, citing

9  California law, defendants contend the only lawful way to remove a defaulting borrower

10 from the title, in the absence of the borrower's execution of a deed transferring the property

11 to the lender, is to foreclose on the property.[3]  The FAC, however, makes no reference to

12 BANA's having a duty to "unilaterally" remove plaintiffs from the title; rather, the FAC

13 alleges BANA "never sought to have [p]laintiffs removed from the title."  (See FAC ¶ 28.)

14 Construing said allegation in the light most favorable to plaintiffs, see NL Indus., Inc. v.

15 Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (holding, when analyzing motion to dismiss,

16 district courts construe allegations in complaint "in the light most favorable to [plaintiff]"), the

17 Court finds plaintiffs are alleging that BANA, upon receiving the keys to the vacated

18 premises, failed to take, within a reasonable amount of time, whatever steps are allowed

19 under California law to remove plaintiffs from the title.  As discussed above, defendants

20 concede such steps are available.  The Court thus turns to defendants' second argument,

21 specifically, that plaintiffs have not alleged sufficient facts to support a finding that they

22 have been damaged by the alleged breach of the covenant of good faith and fair dealing.

23        The FAC identifies three types of "harm" assertedly caused by the alleged breach:

24 (1) "severe emotional distress"; (2) the "assessment of fees and costs" by the "servicer"

25 and by a homeowner's association; and (3) "damage to [plaintiffs'] credit."  (See FAC ¶ 40.)

26 As discussed below, plaintiffs have not alleged sufficient facts to support a finding that

27 _____

28        [3]In the settlement agreement, plaintiffs conceded they had "defaulted on their loans."
   (See FAC Ex. H at 1.)

4

1    damages for any of those alleged harms are recoverable.

2         "Damages are awarded in an action for breach of contract to give the injured party

3    the benefit of his bargain and insofar as possible to place him in the same position he

4    would have been in had the promisor performed the contract."  Coughlin v. Blair, 41 Cal. 2d

5    587, 603 (1953); see also Digerati Holdings, Inc. v. Young Money Entertainment, LLC, 194

6    Cal. App. 4th 873, 885 (2011) (observing that, "[a]lthough breach of the implied covenant

7    often is pleaded as a separate count, a breach of the implied covenant is necessarily a

8    breach of contract").  Here, cognizable damages would appear to be those that would

9    place plaintiffs in the position in which they would have been had BANA timely foreclosed

10   on the property after plaintiffs had performed their obligations under the settlement

11   agreement.

12        At the outset, however, the Court notes that damages for "mental suffering and

13   emotional distress" are only available for a breach of contract where "the express object of

14   the contract is the mental and emotional well-being of one of the contracting parties."  See

15   Erlich v. Menezes, 21 Cal. 4th 543, 559 (1999) (citing, as example, "cemetery's agreement

16   to keep burial service private and to protect grave from vandalism").  Here, clearly, the

17   express object of the subject settlement agreement was not the "mental and emotional

18   well-being," see id. of any party thereto.

19        Next, simply being assessed fees and costs is not a cognizable loss.  Rather,

20   "California authorities generally require payment of the liability in order to include the

21   liability as damages."  See Green Wood Industrial Co. v. Forceman Int'l Dev. Group, Inc.,

22   156 Cal. App. 4th 766, 777 (2007).  Here, plaintiffs do not allege they have paid any of the

23   assessments, and, consequently, do not allege they have incurred an actual loss.  To the

24   extent California authority might be read to recognize a claim for damages based on a

25   liability without actual payment, plaintiffs fail to make an adequate showing.  In particular,

26   plaintiffs fail to allege facts to support a finding that any such claimed liability "could or

27   would be enforced by the third party against the plaintiff or that the plaintiff otherwise could

28   and would satisfy the obligation."  See id. at 776 (holding third party's demand for payment

not sufficient to support award for damages "because that third party may never attempt to force the plaintiff to satisfy the alleged obligation, and [the] plaintiff may never pay [it]"). Further, as to any claim for payment made by defendants, such claim, as defendants acknowledge, would be "wiped out" upon foreclosure.  (See Defs.' Mot. at 4:27-28 (citing "California's Anti-Deficiency Statute," Cal. Code Civ. Proc. § 580b).)

Lastly, plaintiffs' allegation that they have a "low credit score" and cannot "purchase anything on credit" (see FAC ¶ 40) is insufficient as plaintiffs allege no facts to suggest their credit score would have been more favorable if their credit reports reflected a foreclosure as opposed to a continuation of unpaid mortgage payments.  See Coughlin, 41 Cal. 2d at 603 (holding recoverable damages are those that would "put [plaintiffs] in the same position [they] would have been in had [defendant] performed")

Accordingly, as plaintiffs have not alleged sufficient facts to support a finding that they incurred any type of recoverable loss as a result of BANA's alleged breach, Count I is subject to dismissal.  As that deficiency was not previously identified by the Court, and it is not clear that plaintiffs would be unable to allege additional facts to support their claim, the Court will afford plaintiffs leave to amend to allege, if they can do so, a cognizable injury.

**B.  Count II - "Fraud"**

In Count II, plaintiffs allege against BANA and BNYM a claim for fraud.

In its order of May 20, 2015, the Court dismissed the fraud claim, with leave to amend to allege, if plaintiffs could do so, a claim that they were fraudulently induced to enter into the settlement agreement.

Plaintiffs now allege that the attorney retained by BANA to represent BANA in the state court action plaintiffs filed in 2011 made false statements to them during settlement negotiations.  (See FAC ¶¶ 42-43.)  As described in the FAC, BANA's counsel told them that (1) "the only way to get out from under their mortgage obligations was to turn the property over to BANA," and that (2) "this was their only option if they wanted to rebuild their lives."  (See FAC ¶¶ 46-47.)  According to plaintiffs, they entered into the settlement agreement in reliance on the above-referenced "false statements."  (See FAC ¶ 47.)

6

1    Defendants argue, inter alia, the statements made by BANA's attorney during the

2    settlement negotiations are absolutely privileged under § 47 of the California Civil Code,

3    and, consequently, the fraud claim is subject to dismissal.  The Court agrees.

4    Under § 47, a "privileged publication" includes statements made in a "judicial

5    proceeding."  See Cal. Civ. Code § 47(b).  The privilege may be raised as a defense to "all

6    torts except malicious prosecution," see Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990),

7    and is "absolute in nature," see id. at 215.  To determine if a statement is privileged under

8    § 47(2), courts apply a "four-part test," see id. at 219; specifically, the privilege applies to

9    any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

10   other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that

11   [has] some connection or logical relation to the action," see id. at 212.

12   "Numerous courts" have held that statements "made during settlement negotiations"

13   are privileged under § 47.  See Navarro v. IHOP Properties, Inc., 134 Cal. App. 4th 834,

14   843 (2005) (citing "[n]umerous courts" so holding; finding cause of action for fraud was

15   "barred" by § 47 where based on allegation "[plaintiff] was lied to about [defendant's]

16   intentions with regard to the settlement terms"); Dowling v. Zimmerman, 85 Cal. App. 4th

17   1400, 1422 (2001) (holding statements made by attorney "while negotiating [a] stipulated

18   settlement of [an] unlawful detainer action" were "privileged under subdivision (b) of Civil

19   Code section 47").  Nonetheless, plaintiffs argue, the privilege does not apply here,

20   because, according to plaintiffs, "the instant action in no way seeks to achieve the

21   objectives of the 2011 litigation nor does it have any connection or logical relation to the

22   dismissed action."  (See Pls.' Opp. at 12:15-19.)  In other words, plaintiffs appear to argue

23   that the action referenced in the third and fourth elements of the above-cited four-part test

24   is the current action, in which the privilege has been asserted, not the earlier lawsuit in

25   which the statement was made.  The relevant authority, however, is to the contrary.  See,

26   e.g., O'Neil v. Cunningham, 118 Cal. App. 3d 466, 471-72, 475 (1981) (holding, where

27   defamation claim was based on statement made in letter sent during course of prior

28   litigation, claim was barred by § 47 as letter "had a 'connection' with the underlying lawsuit"

1    and "was aimed to achieve the object of the [prior] litigation, namely, to settle it").

2           Accordingly, Count II is subject to dismissal, without leave to amend.

3    **C.  Count III - "Violation of Business and Professions Code, Section 17200 et seq."**

4           In Count III, plaintiffs allege that BANA and BNYM violated § 17200 of the California

5    Business and Professions Code.

6           In its order of May 20, 2015, the Court dismissed plaintiffs' § 17200 claim, with leave

7    to amend to identify a practice as to which plaintiffs had standing to challenge.

8           Plaintiffs now base their § 17200 claim on allegations that "BANA and BNYM

9    "breach[ed] the implied covenant of good faith and fair dealing in their performance under

10   the 2012 Settlement and Agreement" (see FAC ¶ 53.C), and that BANA's counsel made

11   false statements when negotiating the settlement of the prior state court action (see FAC at

12   15: 5-9).[4]  In order words, the § 17200 claim is derivative of Counts I and II.

13          To the extent Count III is based on BANA's counsel's statements made during

14   settlement negotiations, Count III is subject to dismissal, as defendants argue, for the

15   reasons stated above with respect to Count II.

16          To the extent Count III is based on the alleged breach of the covenant of good faith

17   and fair dealing, defendants argue Count III is subject to dismissal for failure to allege the

18   requisite injury, i.e., that plaintiffs have "lost money or property" as a result of the breach.

19   See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320-21 (2011) (holding plaintiff

20   seeking to bring § 17200 claim must have "lost money or property" as result of alleged

21   violation) (internal quotation and citation omitted).  The Court agrees.

22          As discussed above with respect to Count I, although plaintiffs allege they have

23   been assessed fees and costs, they do not allege they have paid any such assessment,

24   nor do they allege they otherwise have incurred a loss as a result therefrom.  Additionally,

25   and as further discussed above with respect to Count I, plaintiffs do not allege sufficient

26   _____

27          [4]Plaintiffs also identify in Count III other assertedly unlawful practices.  (See FAC
     ¶¶ 54.A., 54.B, 54.D, 54.E.)  In its order dismissing the initial complaint, however, the Court
28   dismissed the § 17200 claim without leave to amend to the extent it was based on those
     additional practices.  (See Order, filed May 20, 2015, at 9:2-5.)

facts to support a finding that any loss of credit was the result of BANA's failure to foreclose on the property, i.e., that their credit scores would have been better had a foreclosure occurred.

Accordingly, Count III is subject to dismissal.  As said deficiency was not previously identified by the Court, and it is not clear that plaintiffs would be unable to allege additional facts to support their claim, the Court will afford plaintiffs leave to amend to allege, if they can do so, that they lost money or property as a result of the alleged breach of the implied covenant of good faith and dealing.

**D.  Count IV - "Negligent Infliction of Emotional Distress"**

In Count IV, plaintiffs allege BANA's conduct as set forth in Counts I and II constituted "negligence" (see FAC ¶ 62), specifically, the "knowing fraud and breach of contract committed by BANA" (see FAC ¶ 59).

To the extent Count IV is based on "fraud," i.e., BANA's counsel's statements made during settlement negotiations, Count IV is subject to dismissal for the reasons stated above with respect to Count II.

To the extent Count IV is based on the alleged breach of the covenant of good faith and fair dealing, Count IV is subject to dismissal, for the reason that, as discussed above with respect to Count I, damages for emotional distress are not recoverable for the breach of a contract of the type alleged here, and plaintiffs cannot avoid such rule by recasting the claim as one for negligence or another tort.  See Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102 (1995) (citing "general law precluding tort recovery for noninsurance contract breach").

Accordingly, Count IV is subject to dismissal in its entirety.

**E.  Count V - "Intentional Infliction of Emotional Distress"**

In Count V, plaintiffs allege that, as a result of the above-referenced "deliberate fraud and breach of contract," they have suffered "extreme emotional distress."  (See FAC ¶ 68.)

//

1    As Count V is, like Count IV, derivative of Counts I and II, the Court finds Count V is

2    subject to dismissal for the reasons stated above with respect to Count IV.

3    Accordingly, Count V is subject to dismissal in its entirety.

4                                **CONCLUSION**

5    For the reasons stated above, defendants' motion to dismiss is hereby GRANTED,

6    and the First Amended Complaint is hereby DISMISSED.

7    If plaintiffs wish to file a Second Amended Complaint for purposes of curing the

8    deficiencies identified above with respect to Counts I and III, plaintiffs shall file any Second

9    Amended Complaint no later than August 7, 2015.

10   In light of the above, the Case Management Conference is hereby CONTINUED

11   from August 28, 2015 to October 23, 2015, at 10:30 a.m.  A Joint Case Management

12   Statement shall be filed no later than October 16, 2015.

13   **IT IS SO ORDERED.**

14

15   Dated:  July 23, 2015

16                              MAXINE M. CHESNEY
                               United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28